Pottlitzer *et al. v.* Wesson *et al.*

Filed Dec. 13, 1893.

---

No. 795.

## POTTLITZER ET AL. *v.* WESSON ET AL.

HARMLESS ERROR.—*Sustaining Demurrer to Good Paragraph of Answer.* —It is harmless error to sustain a demurrer to a good paragraph of answer if there is a paragraph remaining under which the same facts may be proven.

PLEADING.—*Reply, Sufficiency of.*—*Accord and Satisfaction.*—*Part Payment.*—In an action for balance due on a car load of bananas, to which the defendant answered that plaintiff received $550.70 in settlement of the car of bananas in suit, a reply that such sum was not accepted in full satisfaction of the amount due, but that it was received in part payment only, of which fact plaintiff had due notice, is sufficient on demurrer.

SALE.—*Executory Contract.*—*Order for Goods.*—*What Amounts to Acceptance of Goods.*—*Vendor and Vendee.*—The following order was made of Hoadley & Co., New Orleans, May 13, 1891: "Ship Pottlitzer Bros., Fort Wayne, and Pottlitzer Bros., Lafayette, car each of straight run bananas out of steamer 'Hewes,' at $1.50 per bunch," and May 14, Hoadley & Co. shipped a car of bananas to Pottlitzer Bros., at Lafayette, which arrived May 17, and vendees, on inspecting the bananas, wired vendors, May 18 and 19, that they would not accept the bananas as "straight run," to which the vendors replied at once, by telegram and by letter, that the bananas were "straight run," and that they must accept them as such, after which vendees took the bananas into their possession and sold them.

*Held,* that the conduct of the vendees constituted an acceptance of the bananas as per order.

ACCORD AND SATISFACTION.—*What Amounts to.*—*Delivery of Check for Less than Amount Due.*—*Debtor and Creditor.*—Where a debtor sends a creditor a check in settlement of an account, the check being less

than the amount due, an acceptance of the check by the creditor will not amount to an accord and satisfaction of the amount due, unless the creditor must have understood, from the words used by the debtor, in connection with the delivery of the check, that they were to accept it in full of their claim.

From the Allen Superior Court.

*W. P. Breen*, for appellants.

*C. H. Worden* and *J. Morris, Jr.*, for appellees.

DAVIS, C. J.—The evidence tends to establish the following state of facts:

Appellants are partners, doing business in Fort Wayne and Lafayette, Indiana, under the name of Pottlitzer Brothers; and appellees are partners, doing business in New Orleans, Louisiana, under the name of Hoadley & Co.

On the 13th of May, 1891, Leo Pottlitzer, one of appellants, gave appellees a written order for bananas, as follows: "Ship Pottlitzer Bros., Fort Wayne, and Pottlitzer Bros., Lafayette, car each of straight run bananas out of steamer 'Hewes,' at $1.50 per bunch."

May 14, 1891, appellees shipped a car of bananas to appellants at Fort Wayne, which arrived the 17th or 18th of May. Appellants, on inspecting the bananas, wired appellees May 18 and 19, that they would not accept the bananas as straight run, to which appellees at once replied by telegrams and by letter that the bananas were straight run and that they must accept them as such. Appellants, after this, took the bananas into their possession and sold them.

On the 8th of June, 1892, appellants sent appellees their check for $550.70, and refused to pay the balance of the $825, claimed by appellees as due for the bananas, and this suit was brought.

On trial by jury verdict was returned for appellees in sum of $274.30.

In answer to interrogatories, the jury found that the bananas were straight run.

Judgment was rendered on the verdict against appellants.

The errors assigned are:

1. That the court erred in sustaining the demurrer to sixth paragraph of answer.

2. That the court erred in overruling the demurrer to the second paragraph of reply.

3. That the court erred in overruling appellant's motion for judgment on the answers of the jury to the interrogatories, notwithstanding the general verdict.

4. That the court erred in overruling appellant's motion for a new trial.

It is first urged, by counsel for appellants, that the court erred in sustaining the demurrer to the sixth paragraph of the answer. Conceding, without deciding, that this paragraph contained facts sufficient to constitute a defense to the cause of action, the error, if any, was harmless, for the reason that all the evidence which would have been admissible thereunder was admissible under the fifth paragraph of the answer.

The rule is that it is harmless error to sustain a demurrer to a good paragraph of answer, if there is a paragraph remaining under which the same facts may be proven. *Wickwire* v. *Town of Angola*, 4 Ind. App. 253; *Landwerlen* v. *Wheeler*, 106 Ind. 523.

The next question presented arises on the ruling of the court below on the demurrer to the second paragraph of the reply.

In the fourth paragraph of answer it was alleged that appellees received the $550.70 in settlement for the car of bananas in suit. In reply appellees alleged that said sum was not accepted by them in full satisfaction of the

amount due, but that it was received in part payment only, of which fact appellants had due notice.

In our opinion the facts therein stated constituted a good reply to the answer. The same evidence would, so far as we can see, have been admissible under the general denial, but in any event there was no error in pleading the facts specially.

Counsel for appellants next contend that the court erred in refusing to sustain their motion for judgment on the special interrogatories answered by the jury, for the reason that these interrogatories disclosed the tender to, and receipt by, appellees of the check of appellants for the bananas sued for. The jury answered that the bananas were "straight run"; that there were 550 bunches; that appellants paid appellees by check $550.70; that appellants were claiming that 340 bunches were inferior to straight run and were disputing their liability for the residue of the $825, and that the check so sent by appellants was not accepted by appellees in full payment.

The answers to the interrogatories are not so irreconcilably inconsistent with the general verdict as to entitle appellants to judgment thereon. It is well settled that special findings of fact override a general verdict only when so inconsistent that both can not stand. *Evansville, etc., R. R. Co.* v. *Weikle*, 6 Ind. App. 340, 33 N. E. Rep. 639.

On the last error assigned, two propositions of law are presented in different forms growing out of the rulings of the court below at the trial.

1. Conceding that the bananas were represented as "straight run," and that some of them were of an inferior quality or grade, upon the other undisputed facts presented by the record, was there such a warranty of the goods sold and delivered as survives acceptance?

Pottlitzer *et al. v.* Wesson *et al.*

This we regard as the vital question in the case.

It clearly appears in this case that appellants did inspect and know just what the bananas were before accepting them. It is not pretended that there were any latent defects in the bananas, but simply that they were not "straight run," and that part of them were "thin, unmatured, green fruit, and not free from culls."

The general rule established by the authorities is that in an executory contract for the sale of personal property, words descriptive of the kind, quality, or nature of the property, do not import a warranty that survives acceptance. The purchaser, in such case, has the right, upon inspection, to reject the goods if not of the particular description ordered, but if he accepts the property after such examination, he can not complain of the defects disclosed by the examination. *McConnell* v. *Jones*, 19 Ind. 328; *Brown* v. *Foster*, 15 N. E. Rep. 608; *Studer* v. *Bleistein*, 22 N. E. Rep. 243; *Pierson* v. *Crooks*, 22 N. E. Rep. 349; *Coplay Iron Co.* v. *Pope*, 15 N. E. Rep. 335.

In *McConnell* v. *Jones, supra*, there was an agreement to sell wool "to be washed on the sheep, to be put up in good merchantable order, free from tags." The court, in holding that there was no warranty in this case, say: "According to the case of *Ricketts* v. *Hoyt*, 13 Ind. 181, the contract for the sale of the wool did not contain a warranty, proper, but an agreement to deliver washed wool. * * * But, as it (the agreement) was given for wool, to be prepared and delivered at a future time, it amounted to but an agreement to deliver, at such future time, wool of a given character; was but an executory agreement; and a failure to deliver such wool worked, not a breach of warranty of a thing sold, but a simple breach of contract for the delivery of a given kind of article; and it seems that, in the subsequent execution of

such executory contract, if the party purchasing accepts the article delivered, in execution, after examining it, or with full opportunity to examine, though the opportunity is voluntary, and without any understanding with the other party, unimproved, he estops himself to deny that the article filled the requirements of the contract.''

The case of *Day* v. *Pool*, 52 N. Y. 416, is not in favor of appellants. In that case the defects of the article sold were not discernible upon inspection, and there was a warranty of the quality of the syrup sold, which was obviously intended to survive the receipt and use of the syrup. It was, however, held in that case that the vendee in an executory contract can not rely upon a warranty as to defects open and visible.

In the case of *Fairbank Canning Co.* v. *Metzger*, 23 N. E. Rep. 372, there was a latent defect in the beef sold.

On the question of acceptance, it clearly appears that appellants knew that appellees sent the fruit in fulfillment of their order, and while it is true that appellants, on inspection, insisted that the fruit was not straight run, yet appellees notified them that it was straight run, and that they should so accept it. With this knowledge, appellants took the fruit into their possession and sold it.

In *Pierson* v. *Crooks*, *supra*, the court said: "The general rule is stated in Benjamin on Sales. In section 701, the author says: 'The buyer is entitled, before acceptance, to a fair opportunity of inspecting the goods'; * * and, in section 703 (Bennett's 6th ed.): 'When goods are sent to a buyer in performance of the vendor's contract, the buyer is not precluded from objecting to them by merely receiving them; for receipt is one thing and acceptance another. But receipt will become acceptance if the right of rejection is not exercised within a reasonable time, or if any act be done by the buyer which he

would have no right to do unless he were the owner of the goods.'"

In *Brown* v. *Foster, supra,* the court said: "The evidence in this case, however, permits an inference that the plaintiff exercised a dominion over the machinery inconsistent with ownership in the defendants and consistent only with title as well as possession in himself. He used the machinery in the prosecution of his business, and, although complaining, did not intermit its use. Knowing its defects, he continued to run it. * * * The continued use of the machinery in the promotion of his own business interest, with knowledge of its imperfections, was an unequivocal act of acceptance which no words of his could qualify."

The conduct of appellants must be held to constitute an acceptance of the property.

The second question of law to consider is whether or not, upon the facts involved in the case, there was an accord and satisfaction.

On May 18th and 19th, 1891, appellees duly notified appellants that the fruit was straight run, and that they would hold appellants for the full amount of the invoice. There was no farther communication between the parties until June 8, when appellants sent the check, hereinbefore referred to, accompanied by the following letter and invoice:

(Letter): "Gentlemen—Enclosed you will find our check on Hamilton National Bank in settlement for car of bananas shipped here and held here subject to your order, which we have sold for your account."

(Invoice, omitting figures): "Sirs—We herewith hand you account sales of 550 bunches bananas received May 19, 1891, and enclose you check for $550.70 net proceeds of same. We trust the same will prove satisfactory and to hear from you again. We remain," etc.

On the same day that appellees received the check, they wrote appellants that they had received it and would place the amount to their credit; that they had placed the claim for the bananas in the hands of a collection agency, whose attorney would see appellants about paying the balance of the claim. To this letter appellants never replied.

In the first place, do the words used by appellants in connection with the delivery of their check to appellees, under the circumstances shown, necessarily imply that if appellees accepted the check they must have understood that they were accepting it in full of their claim?

In the case of *Preston* v. *Grant*, 34 Vt. 201, relied on by opposing counsel, the court say: "To constitute an accord and satisfaction it is necessary that the money shall be offered in satisfaction of the claim, and the offer accompanied with such acts and declarations as amount to a condition that, if the money is accepted, it is accepted in satisfaction, and such that the party to whom it is offered, is bound to understand therefrom that if he takes it, he takes it subject to such condition."

Counsel for appellees, among other things, say, in discussing this question:

"Were appellees bound to understand, from these words, that if they accepted the check, they accepted it subject to the condition that it was in satisfaction of their whole demand? Certainly this is not the necessary nor the obvious meaning of the words when considered in connection with the previous transaction between the parties. The words seem to mean that the sum stated is the amount that appellants consider as due appellees for the fruit; that they pay this without dispute, trusting that it will be satisfactory and to "hear again" from appellees on the subject. There is not a word used to indicate that they mean that the check is to satisfy the

larger amount due. They simply mean that this is the
sum in which they consider themselves to be indebted.
They do not say that if appellees will not accept the
check in full payment it shall be returned, nor do they
in any way indicate that this is their meaning.  *  *  *

"If words are used by one party, which can bear two
constructions, and the party to whom they are addressed
gives them a possible, but different construction from
that intended, and informs such party of the sense in
which he understands them, certainly the party using
the words should make plain his meaning at once or be
estopped to say that he used the words in a sense differ-
ent from that in which he knew the other party under-
stood them.

"In the case of *Curran* v. *Rummell*, 118 Mass. 482, a
check for a sum less than the debt was sent by the debt-
or's attorney to the creditor in a letter stating that the
check was "in settlement of your account." The check
was received and collected in the ordinary course of busi-
ness, but the court held that the creditor was not bound
to treat it other than as a part payment by the debtor, to
be applied in reduction of the debt only.  *  *  *

"The case of *Hutton* v. *Stoddart*, 83 Ind. 539, cited
by appellants' counsel, is entirely unlike this case. In
that case the letter containing the check expressly stated
that the check was to be returned if not accepted in full
satisfaction of the debt." See, also, *Fuller* v. *Kemp*, 33
N. E. Rep. 1034.

In the last case cited the court says: "To make out
the defense, the proof must be clear and unequivocal
that the observance of the condition was insisted upon,
and must not admit of the inference that the debtor in-
tended that his creditor might keep the money tendered
in case he did not assent to the condition upon which it
was offered."

The case of *Hills* v. *Sommer*, 6 N. Y. Sup. 469, as stated by counsel for appellants in his brief, is more nearly in point in favor of appellants. In that case it appears that when the dispute arose the plaintiffs drew on defendants for the invoice price which draft was returned with the indorsement: "Amount incorrect. Will remit." Then to a letter from plaintiffs asking what they intended to do, defendants enclosed draft for the amount which they stated they would pay for the goods.

As applicable to the facts in this case, however, we prefer to follow the principles enunciated in *Curran* v. *Rummell*, *supra*, and *Fuller* v. *Kemp*, *supra*.

The appellants here have not brought their case clearly within the rule stated in the last case cited, and are not entitled to a reversal of the judgment of the trial court on this ground.

In this case it should also, in this connection, be borne in mind that the car contained 550 bunches of bananas, for which the original contract price was $1.50 per bunch, or in the aggregate $825, and if, under the uncontroverted facts to which we have hereinbefore called attention, the appellants, on acceptance, after inspection, became bound to pay the full contract price therefor, as liquidated damages an agreement, whether express or implied, if such agreement can be said to have been created, under the circumstances, by the acceptance of the check for $550.70, to take that amount in satisfaction of the $825 debt, is without consideration. *Stone* v. *Lewman*, 28 Ind. 97.

All, however, that we decide on this question is that under the facts and circumstances of this case the alleged accord and satisfaction has not been shown, and no error appears in the proceedings which resulted in the

judgment in favor of appellees, for the excess of the debt over the sum paid, that would justify a reversal.

Judgment affirmed, at costs of appellants.

Filed Dec. 21, 1893.